In the Matter of the **MARRIAGE OF Maryhelen MORRIS and Donald Morris.**

No. 06–98–00136–CV.

Court of Appeals of Texas, Texarkana.

Argued Nov. 16, 1999.

Decided Feb. 23, 2000.

John R. Mercy, Mercy, Carter & Elliott, LLP, Texarkana, Edward D. Ellis, Paris, for appellant.

James R. Rodgers, The Moore Law Firm, LLP, Paris, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Donald Morris and Maryhelen Morris were divorced in a trial before the court. Donald appeals from the final decree, complaining of the trial court's division of certain real and personal property. He contends the court erred by not following the parties' premarital agreement and contends the court abused its discretion by making a property division that was not just or right based on the evidence. Donald further complains that the trial court erred by ordering him to pay $5,000.00 to Maryhelen to satisfy a debt owed by a third party. He also claims that the court prejudiced his rights on appeal by refusing to make specific findings as to the $180,-000.00 awarded to Maryhelen as part of the division of the community estate. We affirm the judgment to the extent it grants the divorce. However, we reverse the division of property and remand that part of the case for a new division consistent with the evidence presented at trial, and in accordance with the parties' antenuptial agreement and the opinion of this Court.

Donald and Maryhelen were married in July 1984. Before getting married, they signed an antenuptial agreement. This agreement provided that separate property owned at the time of marriage would remain separate property, that any other items bought with separate property would remain separate property, that income from separate property and increases of separate property would be treated as separate property, and that in the event of divorce the parties would only seek their separate property estate and one half of the community estate, and that any right of reimbursement to a separate estate or the community estate would be a valid claim.

■ Maryhelen filed for divorce in December 1996. No children were born of this marriage, and the only dispute deals with the division of various pieces of property and the cash awards made to Maryhelen. There are four main pieces of property in dispute: the Graham, Texas, property; Morris Industries; the Highway 82 East property; and the Sesame Street property.[1] The court awarded the Graham, Texas, property, Morris Industries, Inc., and the Highway 82 East property to Donald as his separate property.[2] Maryhelen was awarded the Sesame Street property, as her separate property, and a cash payment of $180,000.00.

■ When a court mischaracterizes separate property as community property, the error requires reversal because a spouse is divested of separate property. *See Eggemeyer v. Eggemeyer*, 554 S.W.2d 137,

---

1. The personal property items in this case are of minimal importance in this dispute. This personal property was awarded to Maryhelen as her separate property, and Donald contends that these items are his separate property. Donald produced copies of checks that he claims are evidence that he purchased the items in question. However, Maryhelen contended that she had either bought these items or that they were gifts to her from Donald. It was well within the court's discretion to determine whom to believe. *See In Matter of Marriage of Parker*, 997 S.W.2d 833, 839 (Tex. App.-Texarkana 1999, pet. denied).

2. The Graham, Texas, property houses a storage business, Graham Self Storage; the Highway 82 East property houses a storage business, Fossil Creek Self Storage.

140 (Tex.1977). If the mischaracterized property would have affected the trial court's just and right division, then the mischaracterization requires the appellate court to remand the entire community estate to the trial court for a just and right division of the properly characterized community property. *McElwee v. McElwee*, 911 S.W.2d 182, 189 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

### The Sesame Street Property

The Sesame Street property was purchased in 1985, during the marriage, but was paid for entirely with Donald's separate funds. The deed to this land was placed in both parties' names. After this land was paid for, Donald and Maryhelen contributed to the construction of a home on it. The court found that this property was presumptively community property and that Donald had not rebutted this community property presumption. The entire property was then awarded to Maryhelen as her separate property. This was error that requires reversal. *See Eggemeyer*, 554 S.W.2d at 140.

■ It is true that property possessed by either spouse during or on dissolution of marriage is presumed to be community property, and that a party attempting to overcome this presumption must establish by clear and convincing evidence that the disputed property is separate. TEX. FAM. CODE ANN. § 3.003 (Vernon 1998). To overcome the presumption of community property, the spouse claiming certain property as separate property must trace and clearly identify the property claimed to be separate. *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex.1975).

■ Donald testified that he bought this land with his separate funds, and presented evidence which purported to trace this property and prove this fact. Maryhelen also admitted that this land was purchased solely with Donald's separate funds. Therefore, the undisputed evidence clearly shows that Donald rebutted the community property presumption.

The trial court may not characterize separate property as community property. *Eggemeyer*, 554 S.W.2d at 140; *see Leighton v. Leighton*, 921 S.W.2d 365, 368 (Tex. App.-Houston [1st Dist.] 1996, no writ). When a court mischaracterizes separate property as community property, the error requires reversal because a spouse is divested of separate property. *Eggemeyer*, 554 S.W.2d at 140; *Leighton*, 921 S.W.2d at 368. Additionally, since separate property was mischaracterized by the court as community property, the court did not divide the property in accordance with the premarital agreement.

■ However, when this land was purchased, the deed was placed in the names of both Donald and Maryhelen. It is well established law that when a spouse uses separate property to acquire property during marriage and takes title to that property in the names of both spouses, a presumption arises that the purchasing spouse intended to make a gift of one half of the separate funds to the other spouse. *Cockerham*, 527 S.W.2d at 168; *Graham v. Graham*, 836 S.W.2d 308, 310 (Tex.App.-Texarkana 1992, no writ). In order to rebut this presumption, evidence of the absence of an intent to make a gift must be shown. *See Cockerham*, 527 S.W.2d at 168. Donald did not rebut this presumption. Therefore, one half of this land is properly characterized as Maryhelen's separate property.

■ After the land was purchased and the deed was placed in the names of both Donald and Maryhelen, both parties contributed separate and community funds to build a residence on the property. "Once separate property character attaches, that character does not change because community funds are spent to improve the property." *Leighton*, 921 S.W.2d at 367, *citing Carter v. Carter*, 736 S.W.2d 775, 780 (Tex.App.-Houston [14th Dist.] 1987, no writ). Any improvements

made on separate property, including a residence, are considered the separate property of the land owner. *See Leighton*, 921 S.W.2d at 367. Therefore, since Donald and Maryhelen each own a one-half separate property interest in the real property, they also each own a one-half separate property interest in the home, with a right of reimbursement to the community for any funds that were expended to make the improvements.

■ A right to reimbursement arises when the time, toil, and labor of the community estate are expended to enhance and benefit one spouse's separate estate and the community is inadequately compensated for those contributions. *Jensen v. Jensen*, 665 S.W.2d 107, 109 (Tex.1984); *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex.1982). A trial court's discretion in evaluating a claim for reimbursement is as broad as that discretion exercised by a trial court in making a just and proper division of the community estate. *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex.1988). A court's finding can support reimbursement to the community estate, as long as the spouse who is claiming the right to reimbursement establishes the fact and the amount of community funds expended to improve or benefit the other spouse's separate property. *See Vallone*, 644 S.W.2d at 459–60; *Halamka v. Halamka*, 799 S.W.2d 351, 355 (Tex.App.-Texarkana 1990, no writ).

Here, the court clearly erred by characterizing the Sesame Street property as community property and by awarding it in its entirety to Maryhelen as her separate property. Since this mischaracterization clearly affected the court's just and right division of the community estate, it alone requires reversal and remand, and there is no necessity to consider the remainder of the property division. However, for the trial court's consideration on remand, we will discuss the other properties and contentions involved in this appeal.

### The Graham, Texas, Property

■ The Graham, Texas, property was purchased by Donald before marriage for approximately $7,000.00. After the parties were married, Donald used his separate funds to construct storage buildings on the land, which now houses the storage business of Graham Self Storage. Donald testified that the property is now worth $225,-000.00 to $250,000.00. The court awarded the property to Donald as his separate property. Since the property was purchased before marriage, and since all improvements made on it were paid for with Donald's separate funds, the property was properly characterized as his separate property.

■ This characterization was also in accordance with the premarital agreement. However, the agreement also stated that all income and increases from separate property would remain separate, subject to a right of reimbursement to a separate estate or the community estate. The court found that Graham Self Storage had increased in value by $25,000.00 during the marriage, and that both Donald and Maryhelen had expended considerable time, toil, and effort in enhancing the business, and that neither was adequately compensated.

In the court's cash award to Maryhelen, it did not state whether it was awarding her a portion of the increased value of the business, which would be forbidden under the terms of the premarital agreement, or whether it was awarding a reimbursement to the community estate, which is explicitly allowed under the premarital agreement. Here, the court erred in failing to clarify what portion, if any, of the cash award to Maryhelen is reimbursement for the Graham, Texas, property.

### Morris Industries, Inc.

Morris Industries, Inc. is a business that Donald incorporated in January 1979, before he married Maryhelen. Donald owns all of the stock issued in the corporation. The trial court properly characterized Morris Industries, Inc. as Donald's sepa-

rate property and awarded it to him as such.

This characterization also complies with the Morrises' premarital agreement. However, it is unclear if the cash award to Maryhelen is also in accord with the premarital agreement. The court found that Morris Industries had increased in value by $169,000.00, and that Donald was underpaid by at least fifty percent for the community time, toil, and effort expended on the company. The court also found that Maryhelen had spent considerable time, toil, and effort in enhancing the value of Morris Industries without being adequately compensated for her work. With these findings, it is impossible to establish whether Maryhelen was awarded reimbursement (and if so, in what amount) or whether she was given a portion of the increase in value of Morris Industries. Obviously, this is an important distinction because, as discussed above, if the court reimbursed Maryhelen, this would be allowed by the premarital agreement, while sharing in the income or increase in value of separate property would not.

### The Highway 82 East Property

■ The Highway 82 East property was purchased in 1987, during the marriage. At the time of divorce it consisted of two tracts of land, totaling approximately ten and one-half acres. One tract was four acres of vacant land, while the other tract was used to house another storage business, Fossil Creek Self Storage. It is undisputed that the land itself was paid for with Donald's separate funds; however, it is hotly contested whether it was community funds or Donald's separate funds that paid for the improvements on the property. It is clear that when the land was purchased it was placed in the names of both Donald and Maryhelen, as evidenced by the deed, the seller's statement, the construction account, and the promissory note on the property.

■ The trial court found that the property was "jointly owned by the parties." [3] The court further found that, as a result of placing both names on the above documents and by representing to others that the property was owned by both Donald and Maryhelen, that "to the extent Donald Morris expended any separate funds on Fossil Creek Self–Storage ... such was a gift to Maryhelen." When a spouse uses separate property to acquire property during marriage, and takes title to that property in the names of both spouses, a presumption arises that the purchasing spouse intended to make a gift of one half of the separate funds to the other spouse. *Cockerham*, 527 S.W.2d at 168; *Graham*, 836 S.W.2d at 310. In order to rebut this presumption, evidence of the absence of an intent to make a gift must be shown. *See Cockerham*, 527 S.W.2d at 168.

Donald contends that he overcame this gift presumption by testifying that he only put Maryhelen's name on the property in the interest of marital harmony and that he did not intend to actually give her an interest in the property. [4] The court, however, did not find this testimony sufficient to rebut the presumption of a gift. The court found that by acknowledging that Donald intentionally placed the property in both of their names, he had exhibited a specific intent to make a gift to Maryhelen.

3. The finding that the parties jointly owned this property is erroneous. It is incorrect because even if it was found that Donald gave Maryhelen a gift, then she would be a one-half separate property owner, not a joint property owner.

4. Donald contends that an Austin appeals court case illustrates that this testimony is sufficient to overcome the gift presumption. *Peterson v. Peterson*, 595 S.W.2d 889 (Tex.Civ. App.-Austin 1980, writ dism'd). In the *Peterson* case, the husband purchased a house with separate funds. *Id.* at 890. About a month after the marriage, the husband made the final payment and was closing on the house, when his wife insisted on being added to the deed. *Id.* The lower court found that there was no intent to make a gift, and the appeals court merely affirmed this finding. *Id.* at 893.

The court was well within its discretion in determining that the gift presumption was not rebutted. *See Purser v. Purser*, 604 S.W.2d 411, 414 (Tex.App.-Texarkana 1980, no writ).

However, after making this finding, the court did not then award one half of the property to Maryhelen as her separate property. Instead, it awarded the entire property to Donald as his separate property and improperly divested Maryhelen of her half ownership of the property. The court found that the fair market value of the property was $300,000.00 and that Maryhelen was primarily responsible for managing Fossil Creek Self Storage during the marriage. It is unclear whether the court awarded, in its cash payment to Maryhelen, half of the fair market value of the property or whether the court reimbursed Maryhelen for her time and effort spent running the business. Under both the law and the premarital agreement, Maryhelen was entitled to one half as her separate property and was entitled to reimbursement for her time and effort spent running the business on the property. Unless we know the basis on which the court ordered Donald to pay Maryhelen, and how much (if anything) the court ordered as reimbursement for her time and effort in running the business on the property, we cannot determine if a just and right division of the community estate was made.

## "Awarding" Separate Property in the Estate of the Parties

Another major complaint that Donald makes in this appeal is that the court "awarded" his separate property to him in the estate of the parties. He contends that by "awarding" him this property, which was already his separate property, the court improperly considered it in the division of community property. *See Cameron v. Cameron*, 641 S.W.2d 210, 220 (Tex.1982); *Eggemeyer*, 554 S.W.2d at 141–42. He claims that this error requires reversal because the court mischaracterized separate property as community property and thereby divested him of his separate property. *See Robles v. Robles*, 965 S.W.2d 605, 621 (Tex.App.-Houston [1st Dist.] 1998, writ denied).

It is true that the "estate of the parties," which is to be considered by the court in a division upon divorce, has been construed to mean only the community property of the parties. *Cameron*, 641 S.W.2d at 213; *Eggemeyer*, 554 S.W.2d at 139. In ordering a division of the property, the trial court may not divest one party of his separate property. *Cameron*, 641 S.W.2d at 220; *Eggemeyer*, 554 S.W.2d at 142. In the instant case, when the trial court included these pieces of separate property in the estate of the parties, the property was technically mischaracterized. *See Magill v. Magill*, 816 S.W.2d 530, 533 (Tex.App.-Houston [1st Dist.] 1991, writ denied). However, this mistake is not fatal, and it does not require a reversal. *Id.*

Mere mischaracterization of separate property as community property, in the estate of the parties alone, does not require reversal. *Id., citing Mundy v. Mundy*, 653 S.W.2d 954, 957 (Tex.App.-Dallas 1983, no writ). It is appellant's burden to prove that any disparity in the division was caused by the mischaracterization of property and that it was of such substantial proportions that it constituted an abuse of the trial court's discretion. *Magill*, 816 S.W.2d at 533, *citing Mundy*, 653 S.W.2d at 957. Here, Donald was not divested of his separate ownership rights in these pieces of property. Rather, with the exception of the Sesame Street property, he was awarded all of these pieces of property as his separate property. There is no showing that the court's mistake of including the property in the estate of the parties, but actually awarding it to the proper separate property owner, constitutes an abuse of discretion.[5]

---

5. Donald also makes this contention with regard to the personal property items that he

### The $5,000.00 Reimbursement of Medical Expenses

In the final divorce decree, the court also ordered Donald to pay Maryhelen $5,000.00 as reimbursement for medical expenses that were owed to her from Morris Industries, Inc. The corporate minutes of the annual shareholders and directors meeting of Morris Industries, Inc. state that any employee of more than ten years shall be reimbursed for up to $5,000.00 of their yearly medical expenses. Maryhelen testified that she had submitted her bills for reimbursement, but that Donald refused to properly reimburse her for these medical expenses. Donald contends that he is not personally liable for this claim of reimbursement and that it must be made against Morris Industries, Inc., a separate legal entity.

Morris Industries, Inc. was not a party to this suit, and there was no pleading or evidence that proved Morris Industries, Inc. was the alter ego of Donald. It is true that Donald was the sole owner of the stock in Morris Industries, Inc., but it is also true that a corporation is a separate legal entity that normally insulates its owners or shareholders from personal liability. *See Castleberry v. Branscum,* 721 S.W.2d 270, 271 (Tex.1986). There was no evidence that the separateness of the corporation had ceased to exist, or that Donald's actions, as the sole owner of Morris Industries, Inc., were taken in order to perpetrate a fraud or other injustice on Maryhelen. *See Vallone v. Vallone,* 618 S.W.2d 820, 824 (Tex.Civ.App.-Houston [1st Dist.] 1981), *rev'd on other grounds,* 644 S.W.2d 455 (Tex.1982); *Humphrey v. Humphrey,* 593 S.W.2d 824, 826 (Tex.

App.-Houston [14th Dist.] 1980, writ dism'd). Therefore, since there was not sufficient evidence to show that Morris Industries, Inc. is the alter ego of Donald, and since Morris Industries, Inc. was not made a party to this suit, it was error for the court to award the $5,000.00 reimbursement to be paid personally by Donald. *See Robbins v. Robbins,* 727 S.W.2d 743, 746–47 (Tex.App.-Eastland 1987, writ ref'd n.r.e.).

### Specific Findings as to the $180,000.00 Award

In the original division of the estate, the trial court awarded Maryhelen a cash payment of $180,000.00. Other than the $5,000.00 reimbursement of medical expenses, the court offered no further explanation as to what this $180,000.00 award represented. Donald requested the court make findings of fact and conclusions of law. The court complied with this request. However, Donald did not find the court's response sufficiently specific and requested that the court make additional findings of fact and conclusions of law. In this additional request, Donald specifically asked the court to set out the values that it used for each piece of property in making its community property division. Donald claims that the court failed to comply with this request, and that by so doing, harmed him in this appeal.[6]

According to Texas Rule of Civil Procedure 297, when a proper request is made the trial court is required to issue findings of fact and conclusions of law. However, additional findings and conclusions are not required, even though re-

---

contends are his separate property. He contends that even if those items were gifts to Maryhelen from him, they would then be her separate property, and they should not be included in the estate of the parties. The same conclusion is reached with regard to the personal property items as it is with regard to the real property. As discussed above, including these items in the estate of the parties does not, by itself, constitute an abuse of discretion.

6. It appears that the reason the Graham, Texas, property and Morris Industries, Inc. were not valued is that the court did not view them as community property. This conclusion is supported by the fact that the Highway 82 East property and the Sesame Street property were each given a specific value, as requested.

quested, if "[t]he original findings of fact and conclusions of law properly and succinctly relate the ultimate findings of fact and law necessary to apprise [the party] of adequate information for the preparation of his or her appeal." *Finch v. Finch,* 825 S.W.2d 218, 221 (Tex.App.-Houston [1st Dist.] 1992, no writ), *quoting Balderama v. Western Cas. Life Ins. Co.,* 794 S.W.2d 84, 89 (Tex.App.-San Antonio 1990), *rev'd on other grounds,* 825 S.W.2d 432 (Tex.1991).

This Court has held that the trial court is only required to make additional findings that relate to ultimate or controlling issues. *Grossnickle v. Grossnickle,* 935 S.W.2d 830, 838 (Tex.App.-Texarkana 1996, writ denied). "An ultimate fact issue is one that is essential to the right of action.... Such an issue seeks a fact that would have a direct effect upon the judgment." *Finch,* 825 S.W.2d at 221, *quoting Clear Lake City Water Auth. v. Winograd,* 695 S.W.2d 632, 639 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Donald cites *Joseph v. Joseph,* 731 S.W.2d 597, 598 (Tex.App.-Houston [14th Dist.] 1987, no writ), holding that an appellant is harmed by the trial court's failure to place a specific value on disputed property, when a proper request is made.

In the instant case, we find that the valuation of the $180,000.00 cash award to Maryhelen is a controlling issue that has a direct effect on the judgment. Without specific findings as to what values were considered in arriving at that sum, there is no way to know if the court was awarding half the fair market value of a particular property, or if the court was simply reimbursing Maryhelen for her time, toil, and labor in enhancing the value of Donald's separate property, and if so, in what amounts. These findings were "necessary to apprise [Donald] of adequate information for the preparation of his ... appeal." *Finch,* 825 S.W.2d at 221, *quoting Balderama,* 794 S.W.2d at 89.

The judgment is affirmed as to the granting of the divorce, but is reversed as to the division of the property. The property division is remanded for a new division, consistent with the evidence developed at trial, the parties' antenuptial agreement, and this opinion.